# SOLOMON K. LALAKEA AND MOLLIE PANG LALAKEA *v.* LAUPAHOEHOE SUGAR COMPANY, ET AL.

## No. 2207.

ARGUED DECEMBER 2, 1935.      DECIDED MARCH 25, 1936.

COKE, C. J., PETERS, J., AND CIRCUIT JUDGE BROOKS IN PLACE OF BANKS, J., UNABLE TO ATTEND ON ACCOUNT OF ILLNESS.

OPINION OF THE COURT BY PETERS, J.

This appeal is from a decree of a circuit judge at chambers in a statutory proceeding for partition. The respondent minor is the appellant. Petitioner Solomon K. Lalakea, hereafter referred to as the petitioner, and respondent Laupahoehoe Sugar Company, hereafter referred to as the respondent company, are the appellees. The appellant and the respondent company were the only appearing respondents below. The premises, partition of which is sought, are described in R. P. (Grant) 2393, to Kainoa, referred to by name only, area 96 acres, the premises described in R. P. (Grant) 2220, to Kanamu, also referred to by name only, area 81 acres, and a part of R. P. (Grant) 2729, to Keaki, described by metes and bounds, area 143 acres. For brevity the premises will be hereinafter referred to by their respective R. P. (Grant) numbers.

The petitioner, Solomon K. Lalakea, claims ownership in fee simple absolute of an undivided seven-sixteenths interest in an undivided one-half of R. P. (Grant) 2393, and of an undivided seven-eighths interest in each of R. P. (Grants) 2220 and 2729, subject to the dower interest of

his wife, the petitioner Mollie Pang Lalakea, claimed by the latter.

The sole controversy upon this appeal is the validity of the deed through which the appellant claims title, to wit, a deed from T. K. Lalakea to his son Solomon K. Lalakea, the petitioner, dated March 6, 1915, and recorded on May 11, 1915, in the office of the registrar of conveyances of the Territory.

The common source of title is the grantor, T. K. Lalakea.

The respective shares claimed by the petitioner and respondent company are admitted. They together comprise the entirety. It is the respective estates in the shares claimed by them and the estate claimed by the appellant that the validity of the disputed deed affects.

The deed of March 6, 1915, after reserving a life estate in the grantor for his life purports to convey to the grantee an estate for the life of the latter, remainder over to the latter's heirs.

The petitioner, however, instead of claiming a life estate under the disputed deed to him from his father claims the fee to an undivided one-eighth interest by descent from his father who died intestate May 7, 1915, and the fee to remaining fractional shares claimed by him by descent and purchase from the other heirs of his father. Obviously if the disputed deed is valid T. K. Lalakea, the grantor, did not die siezed of any of the premises subject thereto and neither the petitioner nor the other heirs of T. K. Lalakea, through whom the petitioner claims, acquired any title thereto by descent and the petitioner, in support of any estate in the shares claimed by him, is relegated to the terms of the disputed deed which conveyed but a life estate.

The respondent company claims, in addition to other interests otherwise acquired by it and immaterial to the

issues upon this appeal, title to an undivided one-eighth interest in fee in all of the premises, partition of which is sought, as successor in interest of a daughter of the grantor, T. K. Lalakea, one Hannah Makainai, who successfully challenged the validity of the disputed deed in an action of ejectment instituted by her against her brother, this petitioner, and to whom was adjudged therein on February 9, 1921, an undivided one-eighth interest in the premises as one of the heirs at law of the grantor, T. K. Lalakea. See Hannah Makainai, plaintiff, v. Solomon K. Lalakea, defendant, fourth circuit court Law No. 671. It is equally obvious in this connection that if the disputed deed is valid (and the minor respondent is not estopped by the judgment in the *Makainai* case to assert its validity) the estate of the respondent company in an undivided one-eighth interest acquired by it from Hannah Makainai is an estate for life and not in fee, the fee being in the minor respondent as a contingent remainderman expectant under the disputed deed.

The undivided shares, title to which was claimed by the petitioner by descent from his father and by descent and purchase from the coheirs of his father, equal in the aggregate the interests conveyed to him by the disputed deed after there is deducted from the latter the undivided one-eighth interest adjudged to Hannah Makainai so that the estate and not the quantum of interest claimed by the petitioner is affected accordingly as the disputed deed is valid or invalid.

The appellant claims, as heir presumptive of his father, a contingent remainder expectant in all the interests of which his grandfather, T. K. Lalakea, was seized immediately prior to the execution of the disputed deed, if valid, including a contingent remainder in the undivided one-eighth interest claimed by the respondent company. Obviously his claim depends entirely upon the validity of

the disputed deed. If invalid the respective estates in the respective shares claimed by the petitioner and the respondent company are in fee simple and the minor takes nothing under said deed.

The petitioner although admitting estoppel as to the respondent company by the judgment in the *Makainai* case made no claim upon the trial of invalidity of the disputed deed. On the contrary, when called as a witness on behalf of the appellant his testimony sustained its due execution and delivery by the grantor. The issues of invalidity lay between the two respondents. The position of the petitioner in this court is consistent with his position below.

The trial judge found that the deed was a forgery but if not it had never been delivered by the grantor to the grantee. With these findings we are unable to agree.

At the outset it may be apropos to observe that although these same issues have been before this court twice before, once in the *Makainai* case in which findings of the trial court jury waived against the validity of the disputed deed on the same grounds were sustained (see *Hannah Makainai* v. *Solomon K. Lalakea*, 26 Haw. 667) and once in an action at law to quiet title instituted by the petitioner's sister, Lily Hewahewa, against him in which the validity of the deed was attacked upon the same grounds but in which findings of the trial court jury waived in favor of the validity of the deed were also sustained in this court (see *Lily Hewahewa* v. *Solomon K. Lalakea*, supreme court No. 1447, 27 Haw. 544), our conclusion in neither of those cases is in anywise to be considered as controlling in this case, both of those cases having been at law in term and the method of review by writ of error while the present action is in equity, was before the circuit court at chambers and is here upon appeal from a decree of the circuit court at chambers. The issues in-

volved upon the appeals in those cases were raised upon error assigned to the decision of the trial court jury waived upon the ground that the same was contrary to the evidence. Under the method of review employed in those cases the assignment of error raised and could only raise the question of sufficiency of the evidence to sustain the decision. And this court having found in each case that the evidence was sufficient to sustain the decision could not do otherwise than to affirm the judgments, although diametrically opposite to each other. Where, however, the method of review, as here, is by way of appeal from the decree of a circuit judge at chambers it is within the province of this court, nay it is its duty, to examine all the evidence and come to its conclusions independently of those of the trial judge except as it may, upon issues of fact where the evidence is conflicting and the credibility of witnesses is involved, be influenced by the findings of fact of the trial judge which should be and usually are accorded great weight.

In the instant case the evidence is conflicting and involves the credibility of the witnesses but the extent of the weight to be accorded to the findings of fact of the trial judge is doubtful due to the presence, as a part of the evidence in this case, of all of the evidence adduced upon the trial of the *Makainai* case as contained in the transcript of evidence of that case and to the error of the trial court in drawing inferences unfavorable to the appellant by reason of his failure to call as a witness one Daniel Namahoe.

The respondent company in its case in chief offered and there was received in evidence without objection the entire record in the *Makainai* case including the transcript of the evidence. It subsequently attempted to exclude the transcript but was unsuccessful. We are at a loss to

understand the theory upon which the respondent company offered in evidence the transcript of the evidence in the *Makainai* case. It does not appear that any of the witnesses whose testimony is contained in the transcript of evidence in the *Makainai* case were unavailable "by reason of absence from the jurisdiction or for any other recognized cause." *Tsuruda* v. *Farm,* 18 Haw. 434, 438. For instances where such evidence may be used see *Redhouse* v. *Graham,* 20 Haw. 717, 719; *Territory* v. *Curran,* 23 Haw. 421, 422; *Drummond* v. *Makaena,* 30 Haw. 116, 131; *Correa* v. *Waiakea Mill Co.,* 32 Haw. 310, 317. It was legitimate evidence in a proper case for the purposes of impeachment; R. L. H. 1935, § 3832; *Provisional Government* v. *Hering,* 9 Haw. 181, 187; or of showing admissions by the petitioner. *Miller* v. *Melton-Rhodes Co., Inc.,* 102 S. E. (N. C.) 782, 783. But no necessity for its use for either purpose appears. Up to the time of its offer and admission in evidence no evidence had been adduced either for or against the validity of the disputed deed. Moreover the evidence of the petitioner in the *Makainai* case contained no admissions against interest. But whatever the theory of its offer the evidence of the witnesses who testified in the *Makainai* case is a part of the evidence in this case and has the same probative value as original testimony. *Priolo* v. *Southard Wrecking & Trucking Co.,* 91 N. E. (N. Y.) 275.

Some of the witnesses who testified in the *Makainai* case were also called and testified as witnesses in this case. Of the witnesses who testified in the *Makainai* case, however, six were not called nor testified as witnesses in this case. As to those witnesses who testified in the *Makainai* case and did not testify in this case the trial judge was in no better position to judge of the weight and credibility of their evidence than we are. He, no more than we, had the opportunity of observing their appearance and their

conduct and demeanor while on the stand as witnesses.. The opinion of the trial judge indicates that his findings upon the validity of the disputed deed depended in large part upon the evidence adduced in the *Makainai* case as to which the trial judge had no special advantage over this court. It is only in respect to testimony as to which the trial judge is better able to reach a satisfactory conclusion than the reviewing court that the rule as to the findings of fact applies. *Faulkner* v. *Sims,* 94 N. W. (Neb.) 113, 116.

Moreover, the trial judge drew an inference adverse to the weight and credibility of the evidence contained in the *Makainai* transcript of one Daniel Namahoe prejudicial to the appellant due alone and based solely upon the absence of Namahoe as a witness in the instant case. Namahoe, whose name appears as an attesting witness on the disputed deed, testified as a witness in the *Makainai* case that he was personally present when the disputed deed was executed by the grantor and saw the grantor personally subscribe his name thereto and deliver the same to his son, the grantee. Obviously his evidence, if true, gave support to the validity of the disputed deed. Twice during the trial of the instant case the trial judge suggested to the attorneys for the parties collectively that Namahoe be called as a witness, upon the last occasion of which he observed: "It may be that his testimony is so unreliable that there are no attorneys who would want to put him on." Furthermore, the judge's opinion contains a comment upon the absence of Namahoe as a witness, the comment being dismissed with the conclusion that his absence was "a factor to be weighed."

The appellant was privileged to call Namahoe as a witness or not, as he saw fit. The testimony of Namahoe, given by him in the *Makainai* case and contained in the transcript of the evidence in that case had been offered by

the respondent company and was binding upon it. To again call Namahoe for repetition of his evidence would be a mere act of supererogation. The appellant was entitled to the consideration of Namahoe's evidence by the trial judge for what it was worth without any inferences against its weight and credibility by reason of the failure of the appellant or the failure of any of the parties to the cause to call Namahoe personally as a witness in the instant case.

It would serve no useful purpose to recite the evidence in detail. An analysis of the evidence where pertinent will suffice. A history of the situation of the parties, the preparation, execution and delivery of the disputed deed and all the surrounding facts and circumstances incident thereto together with the opinions of witnesses upon the authenticity of the signature of the grantor to the disputed deed may be gathered from the opinions of this court upon review by exceptions of the refusal of the trial court in the *Makainai* case to grant defendant's motion for a nonsuit, reported in 25 Haw. 470, and upon review of the judgment on writ of error in the *Hewahewa* case. The reference to the *Hewahewa* case is qualified by the observation that the evidence in that case is not a part of the evidence in this case and this court, in arriving at its conclusions herein, takes no notice of the evidence in the *Hewahewa* case judicially or otherwise.

We are of the opinion, after a careful consideration of the record, that the appellant has sustained the burden of proof cast upon him and has established by a fair preponderance of the evidence that the disputed deed was executed by the grantor, T. K. Lalakea, and immediately upon its execution delivered by him to his son the petitioner herein. We are impelled to that conclusion by the following considerations: (a) The insufficiency of the evidence offered against the authenticity of the disputed

signature of the grantor, T. K. Lalakea, to overcome the testimony of the subscribing witness Daniel Namahoe and the petitioner, Solomon K. Lalakea, and (b) the admissions made by the respondent company through its proper officers admitting the validity of the disputed deed. They will be considered in the order in which they are given.

No inherent vice appears in the evidence of Daniel Namahoe, one of the attesting witnesses to the disputed deed, which would deprive it, uncontradicted, of full faith and credit. Similarly the evidence of the petitioner. To be sure, there is a conflict in the evidence of the latter but this we consider of no importance. Although the evidence given by the petitioner in the *Makainai* case upon the offer of the transcript by the respondent company was a part of the evidence in this case the appellant called the petitioner and he testified on behalf of the former. But whereas he testified in the *Makainai* case in substance to the effect that after the receipt of the deed from his father he placed it, contained in a receptacle, on a shelf in the dining room where it remained until the day of his father's death, in the instant case he testified that later upon the same day of its receipt from his father upon instructions from the latter he took it and put it in his father's bureau, where it remained until the father's death. It appears that the petitioner, with the knowledge and express approval of his father, had access to this bureau. Any discrepancy in this respect should be resolved in favor of the earlier testimony. *Adams Express Co.* v. *Ten Winkel,* 96 Pac. (Colo.) 818, 820. Moreover, such contradiction merely raised an issue of fact which we resolve in favor of the earlier testimony. *Priolo* v. *Southard Wrecking & Trucking Co., supra.* The physical whereabouts of the disputed deed after delivery by the grantor to the grantee in nowise detracts from the legal effect of the delivery of the disputed deed by the

father to the son in the first instance. *Tyler* v. *Hall,* 17 S. W. (Mo.) 319.

On the other hand the evidence against the authenticity of the signature of T. K. Lalakea to the disputed deed is of little persuasive value. The record in the *Makainai* case contains admitted signatures of the grantor, T. K. Lalakea. Upon the trial of the *Makainai* case three witnesses, namely, a banker, a manager of a trust company and an attorney at law who was also a notary public, gave it as their opinion that the signature to the disputed deed was not that of T. K. Lalakea, due to its dissimilarity to the signature with which they were familiar. The only additional evidence adduced upon the trial of the instant case was an additional admitted or standard signature of T. K. Lalakea, opinion evidence of the same attorney and notary public who had previously testified in the *Makainai* case, experiments in assisted handwriting made upon the trial by the two attorneys who appeared for the respondent company and by the attorney for the appellant assisted by the petitioner, illustrating the manner in which the petitioner had assisted the grantor in subscribing his name to the disputed deed and the opinion evidence of the cashier of a local bank who qualified as an expert by reason of some twenty-seven years' employment in the bank and of independent special study and observation.

Due to the state of the evidence and the absence therefrom of information which we deem necessary to any intelligent comparison between the admitted or standard signatures of the grantor, T. K. Lalakea, and that appearing upon the disputed deed we cannot say that the latter was not affixed thereto in the manner described. The evidence is not sufficiently definite to admit of a conclusion contrary to the integrity of the signature. The petitioner, as a witness, described the process by which the signature was affixed; that he "held" his father's hand by superim-

posing his own on top of that of his father and "helped" him; "guided" his father's hand while the latter wrote his name. But no details of the extent of the assistance exerted by him appear. He testified to none of the sensations experienced by him while assisting his father. We are not in a position to say that the product is consistent or inconsistent with the conditions that obtained at the time of the performance of the physical act. It is impossible to say from the evidence whether the petitioner helped in forming the individual letters of his father's signature or merely steadied a trembling hand. Nor are the experiments that were made in court of any assistance. None of the participants thereto testified for the benefit of the record what they did or how they did it, except upon the occasion of one of the experiments the attorney participating therein stated that he "attempted no control," that he wanted the record to show that the witness "guided" his hand and in response to the general question of whether the conditions of the experiment were "approximately" the same as when he "guided his father's hand" the witness answered in the affirmative. The statement of counsel that he "attempted no control" is not evidence. Approximation is relative. And the question and answer are consistent with reference to obvious physical conditions exclusive of the degree of guidance. The trial judge in coming to his opinion may have resorted to the information that observation of the experiment afforded. But we doubt the value of the observation unassisted by explanation of the mental sensations and reactions to the physical act. Observation, unexplained, could afford no information as to the relative assistance afforded by the participants in the performance of the physical act. Nor, without explanation, are the mental reactions to observation preserved in the record.

The opinion evidence adduced in the *Makainai* case was upon the hypothesis that the disputed signature was an unassisted writing; that it was the product of T. K. Lalakea alone, unassisted by another. And though sufficient to pass a motion for involuntary nonsuit becomes of little value upon the disclosure that the disputed signature was an assisted writing. Upon the trial of the *Makainai* case it was only upon surrebuttal that it was disclosed for the first time that the grantor in writing his name to the disputed deed, due to tremor, was assisted by his son who guided his hand in writing. (See stipulation *Makainai* v. *Lalakea,* 25 Haw. 470, 471.) Upon the conclusion of defendant's surrebuttal no further or additional opinion evidence was submitted. Dissimilarity is consistent with assisted writing.

The attorney at law and notary public who testified in the *Makainai* case was again called and testified in this case. He added as a further reason for his opinion that the signature of the grantor upon the disputed deed looked "too good." Unquestionably unnaturalness and its attendant idiosyncrasies are concomitants of assisted or guided handwriting. But the signature found on the disputed deed may be consistent with the conditions existing at the time it was written. The state of the record does not admit of any comprehensive deductions from its appearance alone.

The experiments offered by the respondent company further than their performance illustrated the manner in which the petitioner guided his father's hand when the latter signed the disputed deed and what assisted handwriting under unknown conditions could produce were clearly incompetent and the preliminary objections thereto made by the appellant should have been sustained. In order that an experiment be of any assistance to the court it should be made under conditions similar to those ob-

taining upon the occasion of the act which the experiment is devised to illustrate. 1 Wig., Ev., § 442; 2 Nichols Applied Evidence, p. 2049; 10 R. C. L. p. 1002, s. 190; *State* v. *Stewart,* 231 Pac. (N. M.) 692, 700; *Daniels* v. *Stock,* 130 Pac. (Colo.) 1031, 1034; *Hall* v. *Brown,* 202 Pac. (Ore.) 719, 721. It was impossible to reproduce for the purpose of experiment conditions similar to those obtaining upon the occasion of the execution of the deed which the experiments were devised to illustrate. The execution of the disputed deed involved a writer of advanced years, enfeebled by disease of considerable duration, from which he shortly died; a concomitant, natural manual tremor; a writer attempting to write his own name and an assistant familiar with the characteristics of the signature of the writer assisted. In the experiments were counsel unaffected by natural tremor, attempting to write not their own names but that of another with which we may infer they were unfamiliar. The extent of the assistance originally given does not appear. And obviously could not be duplicated. There is no showing that it was duplicated. Under the circumstances the scope of the evidence of these experiments should have been restricted to an illustration of the physical act and nothing more.

The evidence of the bank clerk was to the effect that in his opinion the signature of the grantor appearing upon the disputed deed was not an assisted signature and had not been executed in the manner described, but on the contrary that it had been written by the petitioner himself. There are inherent weaknesses, however, in his testimony. In arriving at his opinion he resorted to and considered the experiments made by the respondent company. Holding as we do that the scope of this evidence should have been restricted simply to an illustration of the manner in which the grantor was assisted by his son this evi-

dence is in the same category as though it had never been admitted and the conclusion of the witness was the same as if based in part upon evidence not adduced in the case. Again, one of the reasons assigned by the expert for concluding that the signature of the grantor to the disputed deed was written by the petitioner was that the petitioner was in the habit of patching the second "a" in his surname. This statement is not sustained by the evidence. On the contrary, of all the admitted signatures of the petitioner introduced in evidence, the patching of the letter "a" occurring secondly in his surname appears but once. Moreover, his evidence is entitled to but slight weight. It appears in evidence that this witness but lately appeared as a witness for the prosecution in a criminal case and after testifying on direct examination that the handwriting on an envelope, on a letter and on a card (the last named admittedly containing handwriting of one of the defendants) was written by one and the same person, on cross-examination failed to detect that a fabricated card had been substituted for the original card, despite the fact that he was required by counsel "to subject the fabricated card to the same tests to which he had subjected the real exhibit and to compare it with the writing on the envelope and the letter just as he had compared the real exhibit."

The proof of the validity of the disputed deed is considerably strengthened by the admissions of respondent company made by it in this case and in a certain former case in which it was a party involving the petitioner's title to the premises, partition of which is sought herein. These admissions to the extent that they directly or indirectly admit the validity of the disputed deed are competent and material evidence not by way of estoppel but as admissions of fact. *Shepard* v. *Pratt,* 32 Ia. 296, 299; *Iowa County* v. *Huston,* 43 Ia. 485, 487; *Harrison* v. *Davis,*

22 Haw. 51, 54. Of course such admissions are rebuttable. *Harrison* v. *Davis, supra.* But no claim was made on the trial and no claim is made in this court that any of its admissions were inadvertently made or made under mistake of law or fact. Obviously the weight to be accorded to these admissions is largely influenced by the apparent knowledge of the party making them of the facts to which the admissions relate. The knowledge of the respondent company of the facts will be considered first.

The deed, as already stated, was placed of record on May 11, 1915. The complaint in Law No. 671 was filed December 27, 1918; the decision on December 11, 1920. Judgment was entered February 9, 1921. On December 18, 1919, Hannah Makainai conveyed to one N. Fernandes an undivided one-eighth interest in R. P. (Grant) 2220; N. Fernandes on the same day, in turn, conveyed the interest in R. P. (Grant) 2220 thereby acquired to the Waipunalei Agricultural Company, Limited, and that company, on October 14, 1921, conveyed the interest in said grant thus acquired to the respondent company. On February 14, 1924, Hannah Makainai conveyed to the respondent company "an undivided interest comprising 17.875 acres of the land * * * described in Royal Patent (Grant) number 2729 * * * and an undivided interest comprising 6 acres of the land * * * described in Royal Patent (Grant) number 2393," the conveyance containing the statement: "Said interests of the vendor in said lands being those which were confirmed in her by judgment of the fourth circuit court of the Territory of Hawaii in a certain action in ejectment in which the vendor was plaintiff and one Solomon K. Lalakea was defendant being Law number 671." The areas conveyed are one-eighth of the areas of the respective grants. On May 27, 1925, the respondent company accepted from petitioner a lease of all the "es-

tate, right, title and interest" of the petitioner in the premises subject to this proceeding described as "containing 238 acres." It is undisputed that this area is seven-eighths of the area to which T. K. Lalakea was entitled in severalty under the interests of which he was seized immediately prior to the execution of the deed of March 6, 1915, and to which the petitioner was entitled under the disputed deed after the deduction of an undivided one-eighth interest adjudged to Hannah Makainai by the judgment of February 9, 1921. On August 12, 1931, the respondent company as complainant filed in the circuit court of the fourth judicial circuit against the petitioner and others as respondents, including the wife and minor son of the petitioner, the last named of whom is the appellant herein, a suit in equity for partition. This case will hereafter be referred to by its circuit court number Equity No. 222. It involved the partition of the same premises partition of which is sought in the instant case and the same undivided interests therein claimed by the respondent company as in the instant case. The petitioner as respondent in that case in his answer dated October 10, 1931, alleged: "That under a deed executed by his father, T. K. Lalakea, on March 6, 1915, which deed is recorded in the bureau of conveyances of the Territory of Hawaii in Book 428, pages 122-127, he became and still is the owner in possession of an estate in fee simple in the lands described in paragraph numbered 2 of said petition." Said lands so "described in paragraph numbered 2" are the same premises for which partition is sought in the instant case. These proceedings were subsequently abandoned.

With knowledge of the existing facts imputable from the foregoing the respondent company made the following admissions:

In its complaint in Equity No. 222, signed and verified by its proper officers, the respondent company as com-

plainant, in apparent compliance with the statute requiring that the parties "shall specifically set forth the title and rights of all parties interested therein and the extent of their respective interests as far as known to the petitioner" (R. L. H. 1925, § 2763) specifically set forth in its bill of complaint the "title and rights" of the respondent Solomon K. Lalakea as "the owner of at least a life estate," and the "claimant" of "the fee simple title to an undivided 7/16 interest in the said piece of land described above in Royal Patent (Grant) 2393 and to an undivided 7/8 interest in each of the two pieces of land described above in Royal Patent (Grants) Nos. 2220 and 2729," and alleged in respect to the "source or derivation and devolution of the title, right, interest or claim" of the petitioner Solomon K. Lalakea that the premises had been conveyed to T. K. Lalakea, "who, by deed dated March 6th, 1915 recorded in the Hawaiian register of conveyances, book 428, page 122, conveyed the same to Solomon K. Lalakea for and during the term of his natural life with remainder over to his heirs in fee simple;" and after reference to the judgment of February 9, 1921, in Law No. 671, whereby was adjudged to Hannah Makainai an undivided one-eighth interest in the said lands, alleged in conclusion: "Leaving * * * Solomon K. Lalakea the owner of a life estate or of the fee simple title as the case may be in" (naming the fractional share) "of this piece of land." These admissions are significant when taken in connection with the evidence that outside of the one-fifty-sixth interest acquired from Hannah Makainai in 1929 no outstanding interests were acquired by the petitioner by purchase from his coheirs until 1932, 1933.

Subsequently, on February 8, 1933, the respondent company as complainant filed an amended bill of complaint in said cause (Equity No. 222) also signed and verified by its proper officers, in which are contained the

same allegations as in the original bill of complaint. In this connection it should be noted that although the respondent company admitted ownership in this petitioner "of at least a life estate" in the same fractional shares now claimed by him in this case that prior to 1932 the only interests which the petitioner Solomon K. Lalakea could have owned by descent or purchase from his coheirs (assuming the disputed deed to be invalid) were an undivided one-fifty-sixth from his sister Maria Lalakea, who died intestate in 1920, an undivided one-fifty-sixth by purchase from Hannah Makainai above referred to and perhaps some small fractional interests, the quantum of which is more or less indefinite, by descent from a niece and nephew, two of four children of a deceased sister.

In the instant case the petitioner in his bill of complaint alleged ownership in fee simple of the same undivided interests credited to him by the respondent company in its previous action for partition, Equity No. 222, and alleged as the "source or derivation and devolution of the title, right, interest or claim" of the petitioner in respect to each of the premises partition of which is sought, conveyance to T. K. Lalakea; conveyance by T. K. Lalakea to petitioner "by deed dated March 6, 1915," recorded, etc., and after recitation of the judgment in the ejectment suit in favor of Hannah Makainai, concluded with the allegations that the petitioner, as to the undivided share claimed by him, is "the owner in fee simple." The respondent company filed an answer and cross bill. In its verified answer, signed by its proper officer, it admitted the source or derivation and devolution of title of the petitioner as alleged in his petition but in its verified cross bill alleged similarly as it had previously alleged in Equity No. 222 that the petitioner was "the owner of at least a life estate" and claimed "to own in fee simple" the respective interests claimed by him in the premises and

as to the "source or derivation and devolution of the title, right, interest or claim" of itself, in respect to the several grants, partition of which is sought, repeated the same allegations contained in its amended bill of complaint in Equity No. 222 in respect to the source or derivation of petitioner's title alleging in respect to each grant that the interest owned by T. K. Lalakea therein had been conveyed to the petitioner, Solomon K. Lalakea, by the "deed of March 6, 1915," "for and during the term of his" (Solomon K. Lalakea's) "natural life with remainder over to his heirs in fee simple." An amended answer and cross bill was filed by the respondent company in which it, similarly as the petitioner, jettisoned the disputed deed of March 6, 1915, as a muniment of title of petitioner's rights, but we deem this immaterial to a consideration of its admissions contained in its superseded original answer and cross bill.

All these admissions at least by implication, if not expressly, admit the due execution and delivery of the disputed deed by the grantor. *Brown* v. *Jewett,* 120 Mass. 215; *Gale* v. *Shillock,* 29 N. W. (Dak.) 661, 664.

We therefore hold that the deed from T. K. Lalakea to the petitioner, Solomon K. Lalakea, dated March 6, 1915, was in all respects valid and that the grantor, T. K. Lalakea, was not seized at the time of his death of any right, title, interest and/or estate in or to the premises conveyed thereby.

The decree appealed from is reversed and the cause remanded to the trial judge for further proceedings consistent with this opinion.

*R. J. O'Brien,* for petitioners, filed a brief but did not argue.

*H. Irwin* (*Irwin & Harlocker* on the briefs) for the minor respondent.

*C. A. Gregory* (*Smith, Wild, Beebe & Cades* on the brief) for respondent Laupahoehoe Sugar Company.